CITY OF MARSHFIELD, acting through the Marshfield Electric and Water Commission, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent-Respondent.

Court of Appeals

*No. 01–0855. Submitted on briefs September 12, 2001.—Decided February 28, 2002.*

2002 WI App 68

(Also reported in 643 N.W.2d 122.)

659

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Steven C. Zach* of *Boardman, Suhr, Curry & Field LLP* of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David C. Rice*, assistant attorney general.

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. ROGGENSACK, J. Craft employees who are members of a municipal bargaining unit that also includes non-craft employees petitioned for a severance election to determine whether the craft employees wished to establish a separate bargaining unit comprised exclusively of craft workers. The Wisconsin Employment Relations Commission (the Commission) granted the petition and ordered the election. The circuit court affirmed the Commission's decision. The Marshfield Electric and Water Commission (the Utility), the municipal employer, challenges the election, asserting that the Commission incorrectly interpreted

Wis. Stat. § 111.70(4)(d)2.a (1999–2000)[1] in ordering a unilateral severance vote among the craft employees that had the effect of disturbing the existing bargaining relationship. We conclude that the Commission reasonably interpreted § 111.70(4)(d)2.a to require a severance vote among the craft employees at issue, and, under the due deference standard of review, we further conclude that the alternative interpretation offered by the Utility is not more reasonable. Accordingly, we affirm the order of the circuit court.

## BACKGROUND

¶ 2. In 1964, a majority of the linemen and other employees of the Utility voted to join a bargaining unit consisting of all Utility employees except supervisors and office and clerical employees. Following the election, the Commission's predecessor certified the unit. In 1981, the bargaining unit expanded, without objection from the linemen, to include office and clerical staff.

¶ 3. It is undisputed that the Utility's linemen are "craft employees" as defined in Wis. Stat. § 111.70(1)(d).[2] However, other members of the existing bargaining unit are not craft employees. Therefore, the Utility's linemen have been members of a bargaining unit that includes non-craft employees for several decades. At present, there are about twenty-eight employees in the bargaining unit, ten of whom are linemen.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] Wisconsin Stat. § 111.70(1)(d) defines a "[c]raft employee" as "a skilled journeyman craftsman, including the skilled journeyman craftsman's apprentices and helpers, but shall not include employees not in direct line of progression in the craft." The substance of this definition has not changed since the Municipal Employment Relations Act (MERA) was enacted in 1971.

¶ 4. In 1998, the linemen filed a petition with the Commission seeking an election exclusively among the linemen to determine (1) whether they wished to continue to participate in the existing, mixed bargaining unit, and (2) if they did not, whether they wished to establish a separate, all-craft bargaining unit or to be unrepresented. Although the Utility opposed the unilateral severance vote, the Commission concluded that the linemen, as craft employees, had the right to a self-determination election. The ten linemen voted ten to zero in favor of severing ties with the mixed bargaining unit, and they voted nine to one in favor of representation through a separate, all-craft bargaining unit. As a result of the election, the Commission certified the linemen as a separate bargaining unit.

¶ 5. The Utility appeals the Commission's decision to certify the linemen as a separate bargaining unit following the severance vote. The Utility contends that the Commission incorrectly interpreted Wis. Stat. § 111.70(4)(d)2.a when it ordered a unilateral severance vote among the craft employees. In the alternative, the Utility argues that because in 1964 a majority of the linemen voted in favor of representation in the existing bargaining unit, the Commission should not have ordered another election without initially determining whether there is a "sufficient reason" for holding a second election, pursuant to § 111.70(4)(d)5.

## DISCUSSION

**Standard of Review.**

¶ 6. On appeal of a circuit court's order affirming an agency decision, we review the agency's decision, not the circuit court's decision. *Gordon v. State Med. Examining Bd.*, 225 Wis. 2d 552, 556, 593 N.W.2d 481, 483 (Ct.

App. 1999). The facts here are undisputed. The issues raised by the Utility involve questions of the Commission's statutory interpretations. Statutory construction and the application of a statute to undisputed facts are questions of law, and we are not bound by an agency's legal conclusions. *DOR v. Caterpillar, Inc.*, 2001 WI App 35, ¶ 6, 241 Wis. 2d 282, 625 N.W.2d 338. Under some circumstances, however, it may be appropriate for courts to grant deference to the legal conclusions of an administrative agency. *Arrowhead United Teachers Org. v. WERC*, 116 Wis. 2d 580, 593–95, 342 N.W.2d 709, 716 (1984); *Behnke v. DHSS*, 146 Wis. 2d 178, 184, 430 N.W.2d 600, 602 (Ct. App. 1988).

¶ 7. An agency's interpretation or application of an ambiguous statute may be accorded great weight deference, due weight deference or *de novo* review, depending on the circumstances. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996). We accord great weight deference when all four of the following requirements are met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the agency's interpretation is long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.* Under the great weight standard, we will uphold an agency's reasonable interpretation that is not contrary to the plain meaning of the statute, even if we determine that an alternative interpretation is more reasonable. *Id.* at 287, 548 N.W.2d at 62.

¶ 8. We will accord due weight deference when "the agency has some experience in an area, but has not

developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.* at 286, 548 N.W.2d at 62. The deference allowed under due weight review is accorded largely because the legislature has charged the agency with the enforcement of the statute in question. *Id.* Under this standard, we will not overturn a reasonable agency decision that furthers the purpose of the statute unless we determine that there is a more reasonable interpretation under the applicable facts than that made by the agency. *Id.* at 286–87, 548 N.W.2d at 62.

¶ 9. We review an agency's legal conclusions *de novo* if any one of the following is true: (1) the legal issue is clearly one of first impression; (2) there is no evidence of any special agency expertise or experience in deciding the legal issue presented; or (3) the agency's position on the legal issue has been so inconsistent as to provide no real guidance. *Coutts v. Wisconsin Ret. Bd.*, 209 Wis. 2d 655, 664, 562 N.W.2d 917, 921 (1997). Similarly, we do not defer to an agency's interpretation of a statute if the statute is clear and plain on its face because any deviation from the plain meaning of the statute would be inherently unreasonable. *Caterpillar, Inc.*, 2001 WI App 35 at ¶ 7.

¶ 10. Here, the issues presented for our review surround the Commission's interpretation of Wis. Stat. § 111.70(4)(d).[3] To the extent that the relevant portions of § 111.70(4)(d) are ambiguous, we reject the

---

[3] The relevant portions of Wis. Stat. § 111.70(4)(d) are reproduced below as part of our discussion of the merits of the case.

Utility's contention that *de novo* review is appropriate. Instead, for the reasons that follow, we conclude that we owe at least due weight deference to the Commission's statutory interpretation.[4]

¶ 11. First, severance petitions, such as the petition filed in this case, present a question of representation and require the Commission to consider the appropriateness of the existing bargaining unit and the petitioned-for unit. WISCONSIN STAT. § 111.70(4)(d) specifically addresses the Commission's authority over the selection of representatives and determinations of appropriate units for collective bargaining. Therefore, we conclude that the legislature has clearly charged the Commission with the duty of administering § 111.70(4)(d).

¶ 12. Second, the Commission has some experience in interpreting and applying WIS. STAT. § 111.70(4)(d) to petitions that seek an election to sever a group of employees from an existing bargaining unit. *See, e.g., Rock County*, Dec. No. 26303 (WERC Jan. 26, 1990) (denying severance petition because the petitioned-for unit of licensed practical nurses was not an appropriate bargaining unit); *Milwaukee County*, Dec. No. 19753-A (WERC Feb. 1, 1983) (regarding petitioned-for unit of corrections officers). Moreover, the Commission has previously addressed a severance petition presented by craft employees who were represented in an existing bargaining unit that included non-craft workers. *See City of Hartford*, Dec. No.

---

[4] Because we affirm the Commission's decision applying the due weight standard of review, it is not necessary for us to determine whether great weight deference might be appropriate.

665

10645–A (WERC Nov. 29, 1993);[5] *see also Green Bay Pub. Sch. Dist.*, Dec. No. 23263–A (WERC Aug. 22, 1986) (granting severance vote to craft employees who had been treated as *de facto* members of a bargaining unit that, when originally certified in 1968, expressly excluded craft employees). We conclude that these prior decisions demonstrate the Commission's exercise of its expertise in the area of severance petitions generally and that the Commission has had the opportunity to formulate a position on craft-employee severance particularly.

¶ 13. Third, although the Utility correctly points out that the Commission has never addressed the specific issue presented in this case (*i.e.*, whether craft employees are entitled to seek an election to unilaterally sever themselves from an existing, certified bargaining unit that includes non-craft employees and the unit is one that the craft employees previously voted to join), the test is not whether "the commission has ruled on the precise—or even substantially similar—facts in

---

[5] The Utility dismisses *City of Hartford*, Dec. No. 10645–A (WERC Nov. 29, 1993), as unimportant because (1) the issue of whether the craft employees were entitled to a severance vote was not in dispute in that case, and (2) the Commission's conclusion that the petitioning craft employees were entitled to a unilateral severance vote was not supported by a meaningful analysis of the statute. We disagree that the decision has no bearing on our determination of the standard of review here. The Commission's conclusion in *City of Hartford* that the craft employees were statutorily entitled to a severance vote was necessary to the election order it issued. Further, although the Commission's conclusion is not supported by a detailed explanation, there is nothing ambiguous about its determination that Wis. Stat. § 111.70(4)(d)2.a entitled the craft employees to a unilateral severance vote.

prior cases." *Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 764, 569 N.W.2d 726, 732 (Ct. App. 1997). Rather, the key in determining what deference courts are to pay to an agency's statutory interpretation "is the agency's experience in administering the particular statutory scheme." *Id.* Here, we conclude that the Commission's experience applying WIS. STAT. § 111.70(4)(d) to severance petitions in varying contexts, which necessarily involves a balancing of often conflicting interests and conflicting statutory goals, predominates over the factual differences that make this case unique. *See, e.g., Tannler v. DHSS*, 211 Wis. 2d 179, 184–85, 564 N.W.2d 735, 738–39 (1997) (granting due weight deference; due weight deference can be appropriate even where the agency decision is "very nearly" one of first impression); *Telemark Dev., Inc. v. DOR*, 218 Wis. 2d 809, 819–21, 581 N.W.2d 585, 589 (Ct. App. 1998) (granting due weight deference despite agency's lack of particular expertise on the question presented; agency had developed broad expertise in applying statutory scheme and the decision implicated value and policy judgments). Accordingly, if the statute is ambiguous, we will give due weight deference and affirm the Commission's interpretation of § 111.70(4)(d) if it is reasonable and the interpretation offered by the Utility is not more reasonable.

**Craft Severance Vote.**

¶ 14. The Utility's primary argument is that the Commission incorrectly interpreted WIS. STAT. § 111.70(4)(d)2.a to permit a unilateral severance vote among the craft-employee linemen. According to the Utility, the severance vote was improper because the linemen were already members of a certified bargaining

667

unit that the linemen previously voted to join. Our analysis of the Utility's argument begins with the language of the statute whose meaning is in dispute, and our first task is to determine whether the statute unambiguously sets forth the legislature's intent. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997).

¶ 15. WISCONSIN STAT. § 111.70(4)(d)2.a provides:

> The commission shall determine the appropriate collective bargaining unit for the purpose of collective bargaining and shall whenever possible, unless otherwise required under this subchapter, avoid fragmentation by maintaining as few collective bargaining units as practicable in keeping with the size of the total municipal work force. In making such a determination, the commission may decide whether, in a particular case, the municipal employees in the same or several departments, divisions, institutions, crafts, professions or other occupational groupings constitute a collective bargaining unit. Before making its determination, the commission may provide an opportunity for the municipal employees concerned to determine, by secret ballot, whether or not they desire to be established as a separate collective bargaining unit . . . . The commission shall not decide that any group of municipal employees constitutes an appropriate collective bargaining unit if the group includes both craft employees and noncraft employees unless a majority of the craft employees vote for inclusion in the unit . . . . Any vote taken under this subsection shall be by secret ballot.[6]

(Footnote added.)

---

[6] WISCONSIN STAT. § 111.70(4)(d)2.a was last amended by 1995 Wis. Act 27, § 3800am. The 1995 amendments added provisions regarding school district professional employees and professional employees employed at charter schools and also made other minor revisions. Prior to the 1995 amendments, the

¶ 16. Wisconsin Stat. § 111.70(4)(d)2.a addresses the determination of appropriate collective bargaining units. The statute, on its face, does not differentiate between petitions for initial certification of a bargaining unit and petitions for severance from an existing bargaining unit. Nor does it draw any distinction between employees who are unrepresented as compared to employees who are already represented. The issues to which the statute is being applied concern questions of how and when craft employees may pursue severance from an existing bargaining unit.

¶ 17. The Commission contends that Wis. Stat. § 111.70(4)(d)2.a addresses *all* determinations of appropriate bargaining units and is not limited to the initial certification of a bargaining unit. As we understand the Commission's position, the question of whether an existing bargaining unit continues to be an appropriate unit has an added wrinkle when craft employees are involved because of the statutory directive that the Commission "shall not decide that any group of municipal employees constitutes an appropriate collective bargaining unit if the group includes both craft employees and noncraft employees unless a majority of the craft employees vote for inclusion in the unit." Accordingly, if craft employees in an existing craft and non-craft bargaining unit file a severance petition and if the craft employees at issue have never voted among themselves for inclusion in the mixed unit, the Commission has concluded that the craft employees are entitled to a separate vote on the issue. Under this interpretation of § 111.70(4)(d)2.a, a separate vote among the craft employees is a prerequisite to determining that the existing bargaining unit continues to

text of the statute remained substantially unchanged from its initial enactment in 1971 as part of MERA.

be an appropriate unit. We conclude that this interpretation of § 111.70(4)(d)2.a is reasonable because it honors the special self-determination rights that the statute grants to craft employees.

¶ 18. Under the Utility's interpretation of WIS. STAT. § 111.70(4)(d)2.a, once craft employees have been included in a certified unit with non-craft employees, the statute does not permit the craft employees to unilaterally vote to exclude themselves from the existing unit. The Utility contends that this approach tracks the language in the statute that refers to craft-employee votes for "inclusion in the unit" and that it also recognizes that a post-certification, unilateral severance vote by craft employees has the potential to disrupt and fragment an existing bargaining relationship. We conclude that the Utility's proposed interpretation of § 111.70(4)(d)2.a is also reasonable, and therefore, we further conclude that the statute is ambiguous. We next address whether the Utility's interpretation is more reasonable than the Commission's.

¶ 19. The Commission's obligation under MERA is to promote and balance statutory goals that, at times, conflict with one another. In granting the craft-employee linemen's petition for a unilateral severance vote, the Commission determined that WIS. STAT. § 111.70(4)(d)2.a strikes a balance in favor of the craft employees' right to select a bargaining representative of their own choosing. The Utility's proposed interpretation would strike a different balance in favor of the municipal employer's interests in avoiding fragmentation and in preserving an established bargaining relationship. However, it is reasonable to interpret the statutory provision for a separate vote among craft employees as a legislative determination that craft employees share a particularly strong community of

interest and that separate craft bargaining units tend to contribute to a harmonious and productive bargaining relationship, even at the expense of some fragmentation. We see no basis for concluding that the Utility's proposed interpretation is more closely aligned with the legislature's intent or that it is in any way "more reasonable" than the interpretation of the Commission.

¶ 20. We note that a federal labor statute passed in 1947 uses language in regard to professional employees that is similar to the language found in Wɪs. Sᴛᴀᴛ. § 111.70(4)(d)2.a in regard to craft employees. *See* 29 U.S.C. § 159(b)(1). Interpreting the federal statute in the years prior to the enactment of MERA, the National Labor Relations Board (NLRB) granted unilateral voting rights to professional employees who were members of an existing unit that included both professional and non-professional employees. *See, e.g., Westinghouse Elec. Corp.*, 116 N.L.R.B. 1545, 1547–48 (1956) (granting separate voting rights to professional employees where question of representation was raised in an existing mixed unit; professionals had a prior separate election and voted to join the mixed unit); *Westinghouse Elec. Corp.*, 111 N.L.R.B. 497, 501–02 (1955) (granting unilateral severance vote to professional employees; severance petition was not contested); *S.S. White Dental Mfg. Co.*, 109 N.L.R.B 1117, 1121–24 (1954) (granting professional employees a unilateral severance vote). A labor law treatise summarizes the rights afforded to professional employees under the federal statute as follows:

> Professional employees are entitled to a separate election even though they may have on a prior occasion voted in favor of inclusion in a larger unit with nonprofessionals. The right to a separate election cannot be

limited "to a single opportunity in the course of their employment for a particular employer."

1 THE DEVELOPING LABOR LAW 457 (Patrick Hardin et al. eds., 3d ed. 1992) (quoting *Westinghouse Elec. Corp.*, 116 N.L.R.B. at 1547) (footnotes omitted).[7] We conclude that the NLRB's interpretation of § 159(b)(1) merits our consideration, and it informs our conclusion that the Commission's interpretation of WIS. STAT. § 111.70(4)(d)2.a is not less reasonable than the Utility's proposed interpretation. *See Arrowhead*, 116 Wis. 2d at 600–01, 342 N.W.2d at 719–20 (giving consideration to the NLRB's application of § 159(b) to questions of appropriate bargaining units where the issue was similar to issue WERC decided under Wisconsin law).

¶ 21. The Utility argues that if we follow the Commission's interpretation of WIS. STAT. § 111.70(4)(d)2.a, the Commission will lose all control over craft-employee bargaining units and municipal employers and non-craft employees will be subject to a revolving door of petitions filed by craft employees who

---

[7] *See also Utah Power & Light Co.*, 258 N.L.R.B. 1059, 1060–61 (1981) (ordering a decertification election among professional employees in an existing bargaining unit that included non-professional employees because the professional employees had never had the opportunity to participate in a separate vote for inclusion in the mixed unit; relying on policies inherent in 29 U.S.C. § 159(b)(1)); *New Eng. Tel. & Tel. Co.*, 179 N.L.R.B. 527, 528–29 & n.9 (1969) ("[The professional employees] are entitled to a self-determination election, inasmuch as it appears that they have not previously been afforded an opportunity to express their desire to be included in a unit with nonprofessionals. . . ."; professional employees at issue were represented in a mixed departmental unit, but parties had stipulated to a later determination of their professional status).

desire to include and then exclude themselves from mixed bargaining units. We see no such danger. First, there is no indication that the Commission has interpreted § 111.70(4)(d)2.a to entitle craft employees to unilaterally form a mixed bargaining unit, and this case does not present that question. Second, the Utility's concern over repetitive unilateral elections among a group of craft employees ignores its own alternative argument, discussed below, which relies on MERA's express safeguards against repetitive elections among the same group of employees. *See* § 111.70(4)(d)5.[8] In summary, we conclude that the Commission reasonably interpreted § 111.70(4)(d)2.a to require a severance vote among the linemen and that the alternative interpretation offered by the Utility is not more reasonable.

**The 1964 Election.**

¶ 22. The Utility's alternative argument in this case is that even if Wis. Stat. § 111.70(4)(d)2.a requires the Commission to provide the craft-employee linemen with an opportunity to vote on whether they desire to be included in a mixed bargaining unit, the linemen already had that opportunity in 1964 when a majority of the linemen voted to join the existing bargaining unit. According to the Utility, if the linemen want a second vote, the Commission was required, at a mini-

---

[8] Wisconsin Stat. § 111.70(4)(d)5 provides:

> Questions as to representation may be raised by petition of the municipal employer or any municipal employee or any representative thereof . . . . The fact that an election has been held shall not prevent the holding of another election among the same group of employees, if it appears to the commission that sufficient reason for another election exists.

mum, to exercise its discretion under § 111.70(4)(d)5 and determine whether "sufficient reason for another election exists." The Utility contends that the Commission failed to make any finding that there was a "sufficient reason" to hold a second election.

¶ 23. The Utility's argument assumes that the 1964 election satisfies the requirement of a separate election among the craft employees. The Commission concluded that the pre-MERA election does not satisfy the statutory directive, and accordingly, the Commission never reached the question of whether a "sufficient reason" for a second election exists. We conclude that the Commission's determination that the linemen have never been afforded a separate vote on the issue of representation in a mixed bargaining unit is reasonable for at least two reasons.

¶ 24. First, in the 1964 election, the craft employees were allowed to cast their votes either in favor of representation in the proposed bargaining unit or against representation in the proposed bargaining unit. The votes of the craft employees, who constituted a minority of the total electorate, were then counted on equal footing with the votes of the non-craft employees to determine the outcome of the election. Under these facts, it is reasonable to conclude that the 1964 election was not a separate vote among the craft employees because, at the time of the election, the craft employees had no notice that their votes would later be counted separately from the votes of the non-craft employees in order to determine the craft employees' independent preference for representation. *See Sunrise, a Cmty. for the Retarded, Inc.*, 282 N.L.R.B. 252, 252 (1986) (concluding that where professional employees were not given a separate vote to determine whether they wished to be included in a mixed unit, the bargaining unit

violated 29 U.S.C. § 159(b)(1); setting aside entire election because it was conducted in an inappropriate, mixed unit of professionals and non-professionals). Second, as the Commission noted in its decision, the 1964 vote pre-dated the enactment of MERA by seven years. It is reasonable to conclude that a vote that predates the statute in question is not a vote in compliance with that statute.

¶ 25. Nothing suggests that concluding that the 1964 vote satisfies the statutory directive for a separate vote among craft employees as the Utility contends is more reasonable than the conclusion reached by the Commission. Therefore, we affirm the Commission's decision to treat the election ordered in this case as a first-time election among the linemen for purposes of WIS. STAT. § 111.70(4)(d)2.a. Accordingly, the issue of whether there was a "sufficient reason" for a second election within the meaning of § 111.70(4)(d)5 need not be addressed.

## CONCLUSION

¶ 26. We conclude that the Commission reasonably interpreted WIS. STAT. § 111.70(4)(d)2.a to require a severance vote among the craft employees at issue, and, under the due deference standard of review, we further conclude that the alternative interpretation offered by the Utility is not more reasonable. Accordingly, we affirm the order of the circuit court.

*By the Court.*—Order affirmed.